IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVID BARNES, | ) CASE NO. 1:21-CV-02273-JRA |
| Plaintiff, | ) |
| vs. | ) JUDGE JOHN R. ADAMS<br>) UNITED STATES DISTRICT JUDGE |
| WARDEN DOUGLAS FENDER, | ) MAGISTRATE JUDGE<br>) JONATHAN D. GREENBERG |
| Defendant. | ) |
| | ) **REPORT & RECOMMENDATION** |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Before the Court is the Petition of David Barnes ("Barnes" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (Doc. No. 1) Barnes is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Barnes,* Cuyahoga County Common Pleas Court Case Nos. 2018 CR 635113-A, 2019 CR 637121-A, and 2019 CR 637984. For the following reasons, the undersigned recommends that the Petition be **DENIED.**

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts underlying Barnes' conviction as follows:

> [*P2] Barnes was indicted in three cases regarding events that occurred on June 16, 2018, December 3, 2018, and March 8, 2019. All events involved the same victim: K.B., Barnes's wife of nearly 30 years.

1

[*P3] In Cuyahoga C.P. No. CR-18-635113, Barnes was indicted on one count of felonious assault in violation of *R.C. 2903.11(A)* and one count of domestic violence in violation of *R.C. 2919.25(A)*.

[*P4] In Cuyahoga C.P. No. CR-19-637121, Barnes was indicted on one count of attempted rape in violation of *R.C. 2923.02/2907.02(A)(2)*; one count of kidnapping in violation of *R.C. 2905.01(A)(4)*; and one count of domestic violence in violation of *R.C. 2919.25(A)*. The attempted rape and kidnapping counts were dismissed without prejudice prior to trial.

[*P5] In Cuyahoga C.P. No. CR-19-637984, Barnes was indicted on one count of domestic violence in violation of *R.C. 2919.25(A)*.

[*P6] Barnes pleaded not guilty, and the cases proceeded to trial, at which K.B. did not testify. Prior to trial, the trial court held a hearing on the state's *Evid.R. 804(B)(6)* motion. At the hearing, the state played several jailhouse phone calls between Barnes and his mother and Barnes and K.B. that demonstrated Barnes had attempted to keep K.B. from appearing at trial and hide her location from the state. After reviewing the phone calls, the trial court granted the state's motion.

[*P7] With respect to CR-637121, Cleveland police officer Colbert Stadden testified that on June 16, 2018, he responded to 3716 East 151st Street regarding a report of a female who had been assaulted. Stadden testified that when he arrived, K.B. told him that she and Barnes had been having a drink together when Barnes said he wanted oral sex. K.B. said she told Barnes to take a shower but he refused. K.B. said that when she then refused oral sex, Barnes became angry, pulled her hair, pulled her down to the ground, pushed his knee into her chest, grabbed her jaw, and then punched her once or twice. K.B. told Stadden that a neighbor who heard her screaming came to the door and told Barnes to get off her, at which point he fled. Stadden testified that he observed redness and swelling on K.B.'s cheek and around her mouth. The state then played for the jury body camera footage of K.B.'s interaction with Officer Stadden.

[*P8] With respect to CR-635113, Cleveland police officer Vicki Przybylski testified that late in the evening of December 3, 2018, she responded to 3716 East 151st Street regarding a report of a female with a head injury. Officer Przybylski testified that she spoke with K.B. when she arrived, and that K.B. was scared and shaking and had blood on the back of her head. Officer Przybylski said that K.B. told her that Barnes had pushed her to the ground. The state then played for the jury footage from Officer Przybylski's body camera reflecting her interaction with K.B.

[*P9] Dr. Jon Schrock, an emergency room physician at MetroHealth Medical Center, testified that he treated K.B. at the emergency room at 12:30 a.m. on December 4, 2018. He identified state's exhibit No. 7 as a medical report of her treatment. The report reflected that K.B. told emergency room personnel that

her husband had pushed her out of the house, and she hit her head on the concrete. Dr. Schrock testified that K.B. said she did not feel safe at home and was afraid of someone hurting her. Dr. Schrock said he closed K.B.'s wound to the back of her head with five stitches.

[*P10] Regarding CR-637984, Cleveland police officer Christopher Randolph testified that on March 8, 2019, he responded to the area of East 81st Street and Hough Avenue regarding a domestic violence complaint. He said that when he arrived, he met with K.B., who told him that she had been in a car with Barnes when they began arguing. K.B. told Officer Randolph that Barnes became angry, pulled her wig off — taking pieces of her own hair with it — then punched her in the face several times, and finally threw her out of the moving vehicle. Officer Randolph testified that K.B.'s lip was bleeding and swollen, she had blood on her clothes, and there were noticeable pieces of hair missing from her head. The state then played footage from Officer Randolph's body camera reflecting K.B. telling Officer Randolph and his partner what had happened. The video also reflected K.B. identifying Barnes as the perpetrator from a picture the police showed to her. Officer Randolph testified that when the police apprehended Barnes a short time later, he noticed what appeared to be a piece of K.B.'s hair on his pant leg.

[*P11] The jury subsequently found Barnes guilty of all charges (one count of felonious assault and three counts of domestic violence), and the trial court sentenced him to an aggregate term of eleven years' incarceration. This appeal followed.

*State v. Barnes*, 8th Dist. Cuyahoga Nos. 108857, 108858, and 109321, 2020-Ohio-3184 (Doc. No. 5-1, Ex. 22).

## II. Procedural History

### A. Trial Court Proceedings

#### 1. Indictments

On December 14, 2018, the Cuyahoga County Court of Common Pleas Grand Jury indicted Barnes on one second-degree felony O.R.C. 2903.11 (A)(1) Felonious Assault charge and one third degree felony O.R.C. 2919.25(A) Domestic Violence charge. (Doc. No. 5-1, Ex. 1) The offenses were prosecuted under Case No. 18-CR-635113-A. (*Id.*, Ex. 2).

While the case was pending, on February 19, 2019, a Cuyahoga County, Ohio grand jury indicted Barnes on one second-degree felony O.R.C. 2907.02(A)(2)/ 2923.02 Attempted Rape charge,

3

one fourth-degree felony O.R.C. 2905.01(A)(4) Kidnapping charge, and one third-degree felony O.R.C. 2919.25(A) Domestic Violence charge. (*Id.*, Ex. 3) The offenses were prosecuted under Case No. 19-CR-637121-A. (*Id.*, Ex. 4)

While the other cases were pending, on March 27, 2019, a Cuyahoga County, Ohio grand jury indicted Barnes on one third-degree felony O.R.C. 2919.25(A) Domestic Violence charge. (*Id.*, Ex. 5) The offense was prosecuted under Case No. 19-CR-637984-A. (*Id.*, Ex. 6)

2. **Pretrial Motions**

Prior to trial, over Barnes' opposition, the trial court granted the State's motion for joinder and consolidated the three cases. (*Id.*, Ex. 7, 8, 9) The State also filed a motion to call the victim (K.B.) as an adverse witness. (*Id.*, Ex. 10) Barnes filed an opposition. (*Id.*, Ex. 11) There is no indication that the court ruled on that motion. However, on the day of trial, K.B. was not present to testify. (Doc. No. 5-2 at 7) In her absence, the state moved to allow K.B.'s statements to the police to be introduced via a hearsay exception—the forfeiture by wrongdoing exception. (*Id.* at 4-25) The trial court held a hearing on the motion. (*Id.*) In support of its motion, the state presented several jailhouse telephone recordings between Barnes and his mother and Barnes and K.B. The state argued that the recordings showed Barnes conduct was designed to make sure K.B. did not testify at trial. (*Id.* at 23) Barnes opposed the motion. (*Id.* at 4-25) However, the trial court allowed the evidence to be introduced at trial.

3. **Jury Trial and Sentencing**

A jury trial commenced on June 24, 2019. During the jury trial, the state dismissed the Attempted Rape and Kidnapping charges. (*Id.*, Ex. 12) After trial, the jury found Barnes guilty of Felonious Assault and three Domestic Violence charges. (*Id.*, Ex. 13) The jury also found that Barnes was previously convicted of two domestic violence cases. (Doc. No. 5-2 at 431-32) On June 28, 2019, the trial court sentenced Barnes to an aggregate 11-year prison sentence. (Doc. No. 5-1, Exs. 14-16)

**B.     Direct Appeal**

Barnes, through new counsel, filed a timely notice of appeal to the Eighth District Court of Appeals and the state appellate court consolidated Barnes' appeals. (Doc. No. 5-1, Exs. 18, 19) In his May 24, 2019, appellate brief, he raised the following assignments of error:

> I.     The trial court erred in admitting the testimony of the police officers regarding what K.B. told them about the incidents of abuse by Barnes, and in allowing footage from the body cameras of the police officers to be shown to the jury because they were testimonial out-of-court statements by K.B., and because she never appeared at trial, he was deprived of his constitutional right to confront her.
>
> II.    The trial court committed reversible error in admitting into evidence recorded phone calls made by [Barnes] while he was in the Cuyahoga County Jail awaiting trial because the state failed to establish that he made the calls and, therefore, the calls were inadmissible because they were not properly authenticated.
>
> III.   The trial court erred in admitting the police officers' testimony and the body camera footage into evidence because both were inadmissible hearsay.

(*Id.*, Ex. 20) The State filed a brief in response. (*Id.*, Ex. 21) On June 4, 2020, the state appellate court affirmed Barnes' convictions and sentences. *State v. Barnes*, 8th Dist. Cuyahoga Nos. 108857, 108858, and 109321, 2020-Ohio-3184 (*Id.*, Ex. 22)

On July 6, 2020, Barnes proceeding *pro se*, filed a Notice of Appeal, a Motion to Stay Notice of Appeal, and a Motion to Appoint Counsel with the Supreme Court of Ohio. (Doc. No. 5-1, Exs. 23-25) On July 23, 2020, the Ohio Supreme Court dismissed the case for failure to prosecute and denied Barnes' motions. (*Id.*, Ex. 26) Barnes then filed a motion to reinstate the appeal and a motion to amend his jurisdictional memorandum. (*Id.*, Ex. 27, 28) The Ohio Supreme Court denied Barnes' motion to reinstate appeal and motion to amend on October 7, 2020, and stated that Barnes' could pursue relief via a motion to file a delayed appeal. (*Id.*, Ex. 29) On July 11, 2021, Barnes filed an appeal notice and a motion for leave to file a delayed appeal in the Ohio Supreme Court. (*Id.*, Ex. 30, 31) The Ohio

Supreme Court granted Barnes leave to file a delayed appeal and order him to file a jurisdictional memorandum. (*Id.*, Ex. 32)

Current habeas counsel filed an attorney appearance notice in Case No. 2021-0882, and through counsel, Barnes raised the following proposition of law:

1. The admission of police officer testimony and body camera footage offered as out-of-court statements of victim when the victim did not testify violates a defendant's right to confront his accuser under the Sixth Amendment of the United States Constitution when the statements were testimonial and the State did not establish its burden that the victim was unavailable.

(*Id.*, Ex. 36, 37) The State filed a memorandum in response. (*Id.*, Ex. 38) On November 9, 2021, the Ohio Supreme Court declined to accept jurisdiction of Barnes' appeal pursuant to Ohio S.Ct.Prac.R. 7.08(B)(4). (*Id.*, Ex. 39)

**C.    Ohio App.R. 26(B) Application to Reopen Direct Appeal**

On August 17, 2020, Barnes timely filed a *pro se* application to reopen his direct appeal due to ineffective assistance of appellate counsel in the state appellate court. He alleged that his appellate counsel was ineffective for failing to raise the following claims on direct appeal:

1. The trial court was in error and the appellant was prejudiced when the court allowed victim's statement knowingly.

2. The trial court erred in admitting recorded calls from telephone in the Cuyahoga County Jail.

3. The trial court erred in allowing the admission of the victim's hearsay statements.

(Doc. No. 5-1, Ex. 40). The State filed an oppositional response. (*Id.*, Ex. 41) On October 20, 2020, the state appellate court denied Barnes's application. (*Id.*, Ex. 42) Barnes did not timely appeal the decision to the Ohio Supreme Court.

**D.     Federal Habeas Petition**

On December 2, 2021, through counsel, Barnes filed a Petition for Writ of Habeas Corpus in this Court and asserted the following ground for relief:

> **GROUND ONE**: The admission of the non-testifying victim's testimonial statements violated the Petitioner's rights under the Sixth and Fourteenth Amendments because the State failed to meet its burden as to the unavailability of the witness.

(Doc. No. 1) On January 12, 2022, Warden Douglas Fender ("Respondent") filed his Return of Writ. (Doc. No. 5.) Barnes filed a Traverse on March 28, 2022. (Doc. No. 7) Respondent filed a Reply to Barnes' Traverse on March 31, 2022. (Doc. No. 8) The case is now ripe for review.

### III.     Review on the Merits

**A.     Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S.

7

362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v.Smith*, 574 U.S. 1, 7, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. (2013)).

    A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id. See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**B.     Merits Review**

In his sole ground for relief, Barnes argues that the trial court violated his Sixth Amendment right of confrontation by admitting statements the non-testifying victim made to the police.

**1.  Legal Standard**

The Sixth Amendment to the U.S. Constitution provides that in all criminal prosecutions, "the accused shall enjoy the right ... to be confronted with the witnesses against him." In *Crawford*, the Supreme Court held that the Confrontation Clause bars "out-of-court statements by witnesses that are testimonial." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004) (Doc. No. 7 at 7) Nonetheless, *Crawford* acknowledged exceptions to its holding including forfeiture by wrongdoing.

9

The forfeiture by wrongdoing rule is a common-law exception that, like the confrontation right, predates the U.S. Constitution. *Giles v. California*, 554 U.S. 353, 358-62 (2008). In *Crawford*, the Court reaffirmed the exception stating that, "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds." *Crawford*, 541 U.S., at 62; *see also Davis v. Washington*, 547 U.S. 813, 832–33 (2006) ("one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation."). The forfeiture by wrongdoing exception applies when, "the defendant engaged in conduct *designed* to prevent the witness from testifying."[1] *Giles v. California*, 554 U.S. at 359, 365, 367 (emphasis in original); *see also Winston v. Nagy*, No. 18-1829, 2018 WL 5099231, at *2 (6th Cir. Oct. 12, 2018).

2. **Analysis**

A jury found Barnes guilty of three counts of domestic violence and one count of felonious assault based on incidents that occurred on three separate dates. All of the events involved the same victim: Barnes' wife of nearly 30 years, K.B. She did not testify.

On the day of trial, after K.B. failed to appear, the state moved to introduce statements she made to the police under the forfeiture by wrongdoing doctrine codified in Ohio Evid. R. 804(B)(6). During the hearing, the state argued that Barnes engaged in conduct designed to prevent K.B. from testifying. (Doc. No. 5-2 at 6-27) In support, the state introduced several jailhouse phone conversations between Barnes and his mother and Barnes and K.B. that indicated Barnes had attempted to conceal K.B.'s whereabouts and dissuade her from appearing at trial. (*Id.*) During the hearing, Barnes' counsel objected to the motion on Confrontation Clause grounds. (*Id.*) The objection was overruled.

---

[1] Confrontation Clause violations are also subject to harmless error analysis, which requires that an error is harmless unless it "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, (1993); *Hawkins v. Ganshimer*, 286 Fed.Appx. 896, 902 (6th Cir. 2008), *citing Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

On appeal, Barnes argued that the trial court violated his right to confrontation. (*Id.* at 84-88) Barnes also asserted that "no exception to the hearsay rules" applied to the officer's testimony. (*Id.* at 90) In its decision upholding Barnes' convictions, the appellate court provided the following analysis:

> [*P12] In his first assignment of error, Barnes contends that the trial court erred in admitting the testimony of the police officers regarding what K.B. told them about the incidents of abuse by Barnes, and in allowing footage from the body cameras of the police officers to be shown to the jury. He contends that these were testimonial out-of-court statements by K.B., and because she never appeared at trial, he was deprived of his constitutional right to confront her.
>
> [*P13] In his third assignment of error, Barnes contends that the trial court erred in admitting the police officers' testimony and the body camera footage into evidence because both were inadmissible hearsay. We consider these errors together because they are related.
>
> [*P14] The *Sixth Amendment to the U.S. Constitution* provides that "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)*, the United States Supreme Court held that the admission of a testimonial out-of-court statement of a witness who does not appear at trial violates the *Confrontation Clause* unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness.
>
> [*P15] *Evid.R. 801* protects the confrontation right by prohibiting the use of hearsay statements, i.e., statements other than those made by the declarant while testifying at trial offered in evidence to prove the truth of the matter asserted. Hearsay statements are not admissible at trial unless subject to an exception. *Evid.R. 801* and *802*.
>
> [*P16] *Evid.R. 804(B)(6)* is one such exception. Under *Evid.R. 804(B)(6)*, regarding forfeiture by wrongdoing, a statement offered against a party is not excluded by the hearsay rule "if the unavailability of the witness is due to the wrongdoing of the party for the purpose of preventing the witness from attending or testifying." To qualify for this exception, the state must show by a preponderance of the evidence that (1) the defendant's wrongdoing resulted in the witness's unavailability; and (2) "one purpose was to cause the witness to be unavailable at trial." *State v. Hand, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 84.*

[*P17] Before admitting the testimony and evidence to which Barnes objects, the trial court conducted an evidentiary hearing outside the presence of the jury. It heard recorded jailhouse phone conversations between Barnes and his mother, Annie Barnes, in which Barnes and his mother devised a plan to get K.B. away from her current residence in order to conceal her location from the state. In one of the conversations, Barnes asked his mother to deliver a letter to K.B. about the plan and to pay money to a landlord for an apartment where K.B. could stay because, as Barnes told his mother, "I just need her to be away from where she at, so I gotta take a chance." In another conversation, Barnes told his mother, "I need her to stay away." The court also heard a jailhouse call between Barnes and K.B. in which Barnes told K.B. "just don't come down here, okay?" — to which she responded "okay."

[*P18] The state argued that the jailhouse phone conversations indicated that Barnes was actively trying to conceal K.B.'s whereabouts so the state would not know where she was, and to convince her not to appear for trial. The state asserted that Barnes's efforts had in fact been successful because although the state had left subpoenas for K.B. at the two addresses it had for her, she had not responded to either subpoena. After considering the jailhouse phone conversations, the trial court granted the state's *Evid.R. 804(B)(6)* motion.

[*P19] The decision to admit or exclude evidence at trial lies within the sound discretion of the trial judge, and the court's decision will not be reversed absent an abuse of discretion. *State v. Gale, 8th Dist. Cuyahoga No. 94872, 2011-Ohio-1236, ¶ 12*. Barnes makes no argument that the trial court abused its discretion in admitting the evidence under *Evid.R. 804(B)(6)*; rather, he argues that the admission of the police officers' testimony and body camera footage violated his right under the *Confrontation Clause* to confront K.B. However, "*Crawford* explicitly preserved the principle that an accused has forfeited his confrontation right where the accused's misconduct is responsible for a witness's unavailability." *Hand, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, at ¶ 105*, citing *Crawford, 541 U.S. at 62, 124 S.Ct. 1354, 158 L.Ed.2d 177*, and *Reynolds v. United States, 98 U.S. 145, 158, 25 L.Ed. 244 (1879)* (if a witness is unavailable because of the defendant's own conduct, "he is in no condition to assert that his constitutional rights have been violated.") *See also State v. Brown, 8th Dist. Cuyahoga No. 50505, 1986 Ohio App. LEXIS 6567, 11-12 (Apr. 4, 1986)* ("An accused cannot rely on the *Confrontation Clause* to preclude extrajudicial evidence from a

> source he obstructs.")
>
> [*P20] After listening to the jailhouse phone calls between Barnes and his mother, the trial court determined that Barnes and his mother had actively engaged in wrongdoing with the purpose of making K.B. unavailable for trial. As a result, Barnes forfeited his constitutional right of confrontation.
>
> [*P21] Likewise, Barnes's wrongdoing forfeited any claim that the police officers' testimony regarding what K.B. told them and the body camera footage of their interactions with her was inadmissible hearsay. Under *Evid.R. 804(B)(6)*, a statement offered against a party is not hearsay if the unavailability of the witness is due to the party's wrongdoing. The trial court found that K.B.'s unavailability for trial was the result of Barnes's wrongdoing. Accordingly, the statements against Barnes offered by the police officers and contained in the body camera footage were properly admitted under *Evid.R. 804(B)(6)* as an exception to the hearsay rule. The first and third assignments of error are overruled.

*State v. Barnes*, 8th Dist. Cuyahoga Nos. 108857, 108858, and 109321, 2020-Ohio-3184. **(Doc. No. 5-1, Ex. 20)**

In his habeas petition, Barnes contends that the appellate court's determination was "contrary to and involved an unreasonable application of clearly established Supreme Court of the United States' ." (Doc. No. 1-2 at 4, ¶1 citing §2254(d)(1)) In his Traverse, Barnes specifies that "the conclusions reached in the state courts were an erroneous application of *Crawford*." (Doc. No. 7 at 7) Barnes argues that the submission of the victim's out-of-court statements through officer testimony and body camera footage violated his confrontation rights because (i) the statements were testimonial and (ii) the State failed to meet its burden for establishing the victim's unavailability under Evid.R. 804. (*Id.*)

Respondent does not challenge Barnes' assertion that K.B.'s statements were testimonial. However, Respondent argues that state court's determination on the hearsay exception is not "contrary to, or an unreasonable application of clearly established Supreme Court precedent … [including] *Crawford v. Washington,* 541 U.S. 36 (2004), and its progeny" because the rule of forfeiture by wrongdoing

"extinguishes confrontation claims on essentially equitable grounds…" (Doc. No. 21 at 24) (quoting *Crawford*, 541 U.S. at 62)

Barnes bases his entitled to habeas relief on §2254(d)(1) and asserts that the state's decision was "contrary to and involved an unreasonable application of clearly established Supreme Court of the United States." (Doc. No. 1-2) A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." *Id.* at 405.

Here, the state court identified the relevant precedent that Barnes relies on—*Crawford v. Washington*. The state court's decision is not contrary to *Crawford*. *Crawford* held that the Confrontation Clause bars "out-of-court statements by witnesses that are testimonial." 541 U.S. at 53-54. However, *Crawford* acknowledges that the forfeiture by wrongdoing rule is excluded from its holding. (*Id.*) ( "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds."). The Court reaffirmed the applicability of the forfeiture by wrongdoing rule in post-*Crawford* cases. *Davis*, 547 U.S. at 832–33; *Giles*, 554 U.S. at 367.

In *Giles*, the Supreme Court explained that to invoke the "forfeiture by wrongdoing" exception, the prosecution must show that defendant "engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." *Giles*, 554 U.S. at 367 (2008) *see also Davis*, 547 U.S. at 833. Based on the jailhouse recordings, the state court determined that "Barnes and his mother had actively engaged in wrongdoing with the purpose of making K.B. unavailable for trial" and, as a result, "Barnes forfeited his constitutional right of confrontation" and any claim of inadmissible hearsay (Doc. No. 5-1, Ex. 22, ¶¶ 20, 21) In support, the state court noted that:

14

> In one of the conversations, Barnes asked his mother to deliver a letter to K.B. about the plan and to pay money to a landlord for an apartment where K.B. could stay because, as Barnes told his mother, "I just need her to be away from where she at, so I gotta take a chance." In another conversation, Barnes told his mother, "I need her to stay away." The court also heard a jailhouse call between Barnes and K.B. in which Barnes told K.B. "just don't come down here, okay?" — to which she responded "okay."

(Doc. No. 5-1, Ex. 20, ¶17) These facts are unrebutted. Accordingly, the state court did not arrive at a conclusion inapposite of *Crawford* and its progeny, or decide the case differently on a set of materially indistinguishable facts, because the *Crawford* Court expressly distinguished forfeiture by wrongdoing and stated that the exception "extinguishes confrontation claims on essentially equitable grounds." *Crawford*, 541 U.S. at 62; *see also Davis,* 547 U.S. at 832–33; *Giles,* 554 U.S. at 365. The unrefuted facts also provide support for the state court's finding that the exception applied because Barnes engaged in wrongdoing intended to procure the unavailability of K.B. at trial. Accordingly, Barnes contention that the state court's determination is contrary to *Crawford* is without merit.

The state court also did not unreasonably apply clearly established federal law. In the habeas context, an "unreasonable application" occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" *Williams*, 529 U.S. at 409. Merely erroneous or incorrect application of clearly established federal law does not suffice, the state court must be objectively unreasonable in its application of clearly established federal law. *Id.* 409-11. Barnes has not shown that the state court's application of *Crawford* was objectively unreasonable. The state court determined that the forfeiture by wrongdoing exception applied. That determination was made based on the jailhouse recordings where Barnes made statements asking his mother to help him relocate K.B. because he needed her to stay away and a conversation with K.B. where Barnes told her "just don't come down here, okay?" — to which she responded "okay." (Doc. No. 5-1, Ex. 20, ¶17) Based on these facts, it was not "objectively

unreasonable" for the appellate court to find that this evidence met the forfeiture by wrongdoing exception and, therefore, did not deprive Barnes of his confrontation rights.

Barnes fails to discuss the "forfeiture by wrongdoing doctrine" in either his Petition or Traverse. His failure to discuss the exception is curious given: (i) the trial and appellate courts' explicit reliance on the doctrine to allow K.B.'s statements; (ii) that Respondent based his argument to deny Barnes' Petition on the doctrine; and (iii) Barnes relies on *Crawford*, which as explained earlier, affirms the exception. As Barnes fails to address the exception in his briefing, he cannot demonstrate that the state court's decision based on the exception is in conflict with federal law.

Barnes' references to other Supreme Court cases are also unavailing. For example, Barnes cites *Barber v. Page*, 390 U.S. 719, 724-25 (1968) and argues that the state failed to show that K.B. was "unavailable" under Ohio Evid. R. 804(A)(5) because the prosecutor did not make a "good-faith" effort to procure her appearance.[2] (Doc. No. 7 at 9) In *Barber,* the Supreme Court found that a witness was not "unavailable" because the prosecution failed to make a good-faith effort to obtain the witness' presence at trial. *Barber* at 724-25. However, *Barber* does not apply.

First, *Barber* did not involve the forfeiture by wrongdoing doctrine. *Barber* involved an "exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Barber* at 722. The Court found that the exception in *Barber* "ar[ose] from necessity and…provides substantial compliance with the purposes behind the confrontation requirement." *Barber* at 722. This can be distinguished from the forfeiture by wrongdoing exception in Barnes' case, which

---

[2] Though the issue involves a state evidentiary ruling, Barnes contends that the ruling "offend[ed] [a] principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" (i.e., his right to confront the victim.) (Doc. No. 7 at 10) quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996). Nonetheless, to the extent Barnes has challenged the admissibility of evidence based on an error in the application of state evidentiary law, Barnes' petition is not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67, (1991); *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 2003); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

"extinguishes confrontation claims on essentially equitable grounds." *Crawford*, 541 U.S., at 62. As the Court explained in *Reynolds*:

> The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege.

*Reynolds,* 98 U.S. at 158. Barnes has not pointed to any cases that have applied the *Barber* "good faith" standard in the forfeiture by wrongdoing context and the Supreme Court has stated that forfeiture by wrongdoing exception "extinguishes" the wrongdoer's confrontation rights with respect to that witness. Accordingly, *Barber* does not apply because it does not involve or address the exception at the heart of the state court's decision.

Second, *Barber* is also factually dissimilar to this case. In *Barber* "the State made absolutely no effort to obtain the presence of [the witness] at trial other than to ascertain that he was in federal prison" in another jurisdiction. *Id.* at 723. No similar facts exist here. The appellate court here noted that the state "left subpoenas for K.B. at the two addresses it had for her, she had not responded to either subpoena."[3] (Doc. No. 5-1, Ex. 22, ¶ 18) Barnes also acknowledges that the prosecutor reported notifying K.B. of trial while speaking to K.B. by telephone. (Doc. No. 7 at 10 citing ECF No. 5-2 at 348) The efforts made in Barnes' case (i.e., telephone contact and subpoenas) are not comparable to *Barber*, where the prosecutor located but never attempt to contact the witness.[4]

---

[3] Although Barnes now challenges the subpoenas by arguing that the prosecutor did not submit subpoenas to both addresses for K.B. and only submitted them under one case number, Barnes did not present this evidence to the appellate court. The Court also notes that although Barnes references the purported contents of the subpoenas, he has not attached the evidence and it is not part of the record in this case. Thus, the Court has no evidence before it to support Barnes assertions regarding the subpoenas' contents. Also, "habeas review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170 (2011). Finally, since the Court has determined that *Barber* does not apply because it is not a forfeiture by wrongdoing case, the evidence would not be dispositive.

[4] This case is also distinguishable from *Barber*, because K.B.'s letters of recantation regarding two of the incidents were provided to the jury for consideration and discussed in Barnes' trial counsel's closing argument. (Doc. No. 5-2 at 380, 418) *See Miller v. MacLaren*, 737 F. App'x 269, 276 (6th Cir. 2018) (finding no Confrontation Clause violation where an unavailable witness' letter of recantation in favor of a defendant was read to the jury because "The most successful cross-examination at the time the prior statement was made could hardly hope to accomplish more than has already been

17

*Barber* does not apply because it is not factually analogous and does not involve the exception on which the state court relied upon in Barnes' case.[5] Barnes also highlights a few other Supreme Court cases[6] for general propositions about the importance of the Confrontation Clause right. These cases also do not entitle Barnes to habeas relief because they do not involve the forfeiture by wrongdoing exception and are factually dissimilar.

In light of the above authority and facts, the appellate court's determination that K.B.'s statements were permitted under the doctrine of forfeiture by wrongdoing is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Accordingly, Barnes' sole ground raises no issue upon which habeas relief may be granted.

### IV. Conclusion

For all the reasons set forth above, it is recommended that the Petition be **DENIED.**

Date: July 24, 2023

                                       *s/ Jonathan Greenberg*
                                       Jonathan D. Greenberg
                                       United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.** ***Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**

---

accomplished by the fact that the witness is now telling a different, inconsistent story, and—in this case—one that is favorable to the defendant.") quoting *California v. Green*, 399 U.S. 149 , 159 (1970)

[5] Even if *Barber* applied, Barnes has not identified any analogous caselaw that demonstrates that the prosecutor's efforts here (i.e., making telephone contact with the witness and issuing two subpoenas) would fall below the good faith standard. Thus, he does not meet his burden for habeas relief.

[6] *Bullcoming v. New Mexico*, 564 U.S. 647, 659, 131 S. Ct. 2705, 2714, 180 L. Ed. 2d 610 (2011); *Maryland v. Craig*, 497 U.S. 836, 846, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); and *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). (See Doc. No. 1-2 at 3-5)